**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOHN VALVO,<br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No: 04-70-S |

**TRANS UNION LLC'S MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, moves this Court, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 12.1, for summary judgment. Trans Union is entitled to summary judgment as a matter of law because there is no issue of material fact. The reasons and authorities for this motion are set forth more fully in the attached Memorandum of Law in Support of Motion for Summary Judgment and exhibits thereto.

Respectfully submitted,

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*
DATED: June 20, 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOHN VALVO, Plaintiff, | ) | |
| v. | ) | C.A. No: 04-70-S |
| TRANS UNION LLC, Defendant. | ) | |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), formerly known as Trans Union Corporation, by and through its undersigned attorneys, files the within Memorandum of Law in Support of its Motion for Summary Judgment:

## I. INTRODUCTION

Plaintiff's principal claims arise out of applications by his business for a commercial mortgage and business credit cards, three of which involve reports furnished by Experian, Trans Union's competitor. These claims are improper because business transactions are not cognizable under the FCRA, a consumer protection statute. Therefore, Trans Union is entitled to summary judgment on such claims. As to plaintiff's claims arising out of consumer transactions, he has not presented sufficient evidence to meet his burden in several respects as discussed *infra*. Finally, plaintiff has adduced utterly no evidence that Trans Union willfully violated the FCRA. Accordingly, Trans Union is entitled to judgment as a matter of law on plaintiff's claims for punitive damages and defamation. Trans Union moves for summary judgment on all of plaintiff's claims.

**B. Background.**

Plaintiff's name is John Valvo. His adult son's name is John J. Valvo. Both have lived in Rhode Island all their lives. Plaintiff and his son live in Johnston, Rhode Island; both work at one of plaintiff's businesses, ML Roberts, a jewelry wholesaler, also in Johnston. For a time, plaintiff lived in Greenville, Rhode Island; his son lived on Greenville Road (in Johnston). Plaintiff's son filed for Chapter VII bankruptcy protection on March 10, 1998 under the name John J. Valvo. Despite Trans Union's maintenance of reasonable procedures designed to comply with the FCRA, information respecting that bankruptcy was reported by Trans Union to plaintiff's file.

Plaintiff first became aware of the error in August 2002 when Fleet Bank denied a promotional credit card application made by V&M Holding Company[1] (See plaintiff's deposition, Exhibit "1" hereto, pp. 26-28; Application – Exhibit "2" hereto and the August 31, 2002 denial letter – Exhibit "3") On or about September 17, 2002, plaintiff called Trans Union and disputed several items in his report, including the bankruptcy. About one week later, plaintiff, or his wife, also sent a letter to Trans Union complaining about the bankruptcy. Plaintiff testified he only made a single dispute to Trans Union in the form of the letter. See Dep., pp. 56, 68-69. In response to the dispute, Trans Union removed references to plaintiff's son's address and accounts from plaintiff's file. Unfortunately, the Trans Union investigation operator mistakenly failed to remove the bankruptcy.

Trans Union obtains public record information such as tax liens and bankruptcies from a public records vendor called Hogan Information Services ("Vendor" or "Hogan"). When a

[1] V&M Holding Company's primary business is the ownership and rental of the property in which ML Roberts operates its jewelry business. Plaintiff's Dep., pp. 12 and 45.

consumer disputes a public record, Trans Union alerts Hogan and instructs Hogan to "go back and research the information with the source of the information the courthouse." See Exhibit "4", Deposition of Eileen Little, Trans Union's Group Manager of Consumer Relations, p. 70 ("Little Dep., p. __") Pursuant to its procedures, Trans Union conveyed plaintiff's dispute to Hogan. Hogan then responded that the bankruptcy was filed by a person with a different social security number and a middle initial of "J". Ms. Little testified as follows:

> Q. But the form called for the vendor to verify whether or not, in fact, John Valvo was the person who filed the bankruptcy?
> A. Yes.
> Q. And they haven't done that; is that right?
> * * * *
> A. They did verify that they had a different middle initial and a different Social Security number.
> Q. But they're saying otherwise the way that's being interpreted as otherwise it's the same person or is it – would it be interpreted by Trans Union as they are two different people?
> A. I believe it should have been interpreted as there's two different people, different Social Security number.
> Q. All right. And that being the case the bankruptcy should have been removed form Mr. Valvo's credit report, correct?
> A. I would think so, yes.
> Q. Do you know why it wasn't done?
> A. I would have to say the operator just – I don't know why he missed it. I can't explain that.
> * * * *
> A. ..... But I just believe it was a mistake and he didn't even realize the mistake. Little Dep., pp. 73-75.

As a result of the investigation, Trans Union deleted seven disputed accounts from plaintiff's file, but as a result of the operator error, not the bankruptcy. Trans Union sent plaintiff an updated copy of his report on October 12, 2002 showing these changes. Little Dep., p. 82. Plaintiff did not communicate another dispute to Trans Union until this action was filed in February 2004, almost 18 months later. (Plaintiff's Dep. p. 56). Trans Union promptly deleted the bankruptcy from plaintiff's file in February 2004. The Complaint was Trans Union's first notice of the operator's error.

**C. Plaintiff's Claims.**

Plaintiff's claims fall into four categories: (1) business transactions – related to several business credit card applications and one attempt to refinance a commercial mortgage, all by V&M Holding Company of which plaintiff is an officer; (2) undocumented consumer credit applications which were not denied and related speculative damages; (3) damages related to the sale of zero coupon tax free bonds; (4) punitive damages and a claim for defamation. For the reasons set forth below, Trans Union is entitled to summary judgment on all of plaintiff's FCRA claims.

## II. ARGUMENT

### A. The Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper:

If the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court defined the standard for summary judgment set forth in Rule 56(c):

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. 106 S. Ct. at 2552-53.

As cogently explained in Celotex Corp., the absence of an issue of material fact can be demonstrated by an absence of evidence on such issue:

> [T]he burden on the moving party may be discharged by "showing" - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case. 106 S. Ct. at 2554.

There are no genuine issues of material fact and Trans Union is entitled to summary judgment.

**B. Business Transactions are not cognizable under the FCRA**

Plaintiff principal claim arises out of the alleged delay or inability to start-up an eBay site for V&M Holding, a corporation plaintiff owns and runs with his business partner, Michael Molk. See plaintiff's Dep., p. 15 and Answers to Interrogatories 11 and 12 – Exhibit "5"). Specifically, plaintiff responded to Trans Union's damages interrogatory 12 as follows:

> ANSWER: I had intended to use the Fleet credit card to set up both a Pay Pal and E-Bay account under the new user name with V&M Holding, Inc. To obtain a user name and a Pay Pal Account, a credit card is needed. I was unable to open the business.

Plaintiff's response to Interrogatory 11 respecting ***plaintiff's*** credit applications identifies three **business** transactions: 8/30/02, Fleet Bank, business credit card; 5/9/03 Fleet Bank, business credit card; and in "approximately" 5/03 Citizens Bank business loan $490,000.00. (See Exhibit "5") There is no dispute that each of these transactions was for a business loan sought by V&M Holding. Indeed, plaintiff's Initial Disclosures described his damages as, *inter alia*, "loss of business development, and loss of business reputation." Because plaintiff's testimony and the documents he produced demonstrate that each was a business loan and not consumer transaction protected under the FCRA, Trans Union is entitled to summary judgment as a matter of law.

**i. V&M Holding applies to Fleet for a "Business Credit Card."**

In August 2002 plaintiff completed a Fleet "Business Credit Card" application signed by as the "Authorized Officer, the "president" box is checked. See Exhibit "2" The Denial Letter

was addressed to "Valvo, John, V&M Holding Company" at V&M Holding's address. See denial letter, Exhibit "3". The documents establish that that application concerned a business transaction between V&M Holding and Fleet. In fact, plaintiff testified as follows:

> Q. -- V & M Holding Company? And I take it that the credit was -- V & M's credit application was denied by Fleet at that time?
> A. Yes, it was.
> Q. Was that your first application? Let me rephrase that. Was that V & M Holding Company's first application for credit that you're aware of?
> A. I believe it was.
> Q. Other than the mortgage for the building.
> A. Right. Right. I think -- I'm 99 percent sure it was the first application for a credit card. (Plaintiff's Dep., p. 26)

**ii. V&M applies to Citizens Bank to a refinance a commercial mortgage.**

In 2003, V&M Holding sought to refinance its Fleet ten year mortgage on V&M Holding's property. (Dep. P. 13) An application was made to Citizens Bank which was denied on July 11, 2003. (See Plaintiff's Dep., p. 45 and Denial Letter, Exhibit "6") The denial letter was addressed to V&M Holding Co, John Valvo and Michael Molk (his partner). Citizens gave the following reasons for the denial of V&M's application:

> Insufficient financial strength of business; Insufficient income and/or business cash flow for amt. Requested; Debt to income ratio; and Unable to grant credit for the terms and conditions requested.

With respect to that transaction, plaintiff testified as follows:

> Q. V & M Holding was going to Citizens Bank to refinance the existing Fleet mortgage?
> A. Yes.
> Q. It says, Dear V & M Holding: We've reviewed your application for the request in the amount of 490,000. It says, We regret that we are unable to grant your request for the following reasons. Can you read the reasons there?
> A. Insufficient financial strength of business, insufficient income and/or business cash flow for amount requested, debt to income ratio, unable to grant credit for the terms and conditions requested.
> Q. In this letter, sir, do you see any reference to

> the word bankruptcy?
> A. No, I do not.
> Q. Do you see any reference to the term derogatory credit?
> A. Not derogatory, no.
> Q. Do you know if Mr. Molk got a letter similar to this one or was it just one letter sent to V & M Holding Company?
> A. I think one letter was sent to V & M Holding. (Plaintiff's Dep, pp. 46-47)(emphasis supplied)

The record is indisputable that the Citizens' loan was a business transaction by V&M Holding and therefore not cognizable under the FCRA.

**3. V&M Holding applies to Fleet for a "Business Credit Cards" and Its applications are denied based upon Experian reports.**

In addition, Plaintiff also produced three Fleet denial letters dated November 20, 2002, May 16, 2003 and April 19, 2004. (See letters, Exhibit "7") But these letters expressly state that the credit report obtained in connection with each application was furnished by **Experian**, not Trans Union. (Experian is one of Trans Union's competitors.) To the extent plaintiff seeks damages from Trans Union in connection with those applications, Trans Union is entitled to judgment as a matter of law.

**4. Legal Discussion**

The FCRA applies to "consumer reports", only. The object of the FCRA is to regulate consumer reports furnished in connection with eligibility determinations for "personal, family or household purposes." §1681a(d)(1). Plaintiff's claims respecting the Fleet and Citizens loan applications fail because these applications were for ***business*** loans to start V&M's new online business or refinance its existing business debt and indisputably not for personal use. Trans Union is entitled to judgment as a matter of law on these claims because the FCRA is a ***consumer*** protection statute and does not allow recovery for commercial damages:

> The purpose of the Fair Credit Reporting Bill is to protect consumers from inaccurate or arbitrary information in a consumer report which is used as a

> factor in determining an individual's eligibility for credit, insurance or employment. It does not apply to reports used for business, commercial or professional purposes.

Boothe v. TRW Credit Data, 523 F.Supp. 631, 633 (S.D.N.Y. 1981) *quoting* 116 Cong. Record 36,572 (1970). *See also* Wrigley v. Dun & Bradstreet, Inc., 375 F.Supp. 969 (ND Ga.), *aff'd without op.* 500 F2d 1183 (5th Cir. 1974); Sizemore v. Bambi Leasing Corp., 360 F.Supp 252 (ND Ga 1973); Fernandez v. Retail Credit Co., 349 F.Supp. 652 (ED La 1973); Podell v. Citicorp Diners Club, 914 F.Supp. 1025 (S.D. NY 1996) *aff'd* 112 F.3d 98 (2nd Cir. 1997); Krumholz v. TRW, Inc., 142 N.J.Super. 80, 84 *cert. denied.* 71 NJ 532 (1976).[2]

Accordingly, Trans Union is entitled to summary judgment in connection with Plaintiff's business related claims, including the Citizens July 2003 refinance and the August 31, 2002 Fleet Bank business credit card denial.

### C. Plaintiff's claims for damages to a new business are too Speculative as a matter of law

Even if the FCRA were not limited to **consumer** credit claims, which it is, plaintiff's alleged damages relate to an admittedly new business for V&M Holding. As a matter of law, the alleged damages are too speculative. In Sweet v. Pace Membership Warehouse, Inc., 795 A.2d

[2] Representative Sullivan, the FCRA's sponsor, made the following statement on the floor of the House:

> The purpose of the Fair Credit Reporting Bill is to protect consumers from inaccurate or arbitrary information in a consumer report which is used as a factor in determining an individual's eligibility for credit, insurance or employment. **It does not apply to reports used for business, commercial or professional purposes**. 116 Cong.Record 36,572 (1970)(emphasis supplied)

Likewise, the Federal Trade Commission ("FTC"), the agency responsible for administering the Act, has stated:

> A report on a consumer for credit or insurance in connection with a business operated by the consumer is not a consumer report and the Act does not apply to it. ... The FCRA does not cover reports furnished for the transactions that consumers enter into primarily in connection with businesses they operate (e.g. a consumer's rental of equipment for use in his retail store). *55 Fed.Reg.* 18811, 18814 (1990).

524; 2002 R.I. LEXIS 86 (R.I. Supreme 2002), the Rhode Island Supreme Court vacated an award of lost profits, stating the plaintiff's proofs were too speculative:

> Sweet claimed as lost income the future lost profits from his contracting business. This Court has held that in order to recover future lost profits in an action for breach of contract, a plaintiff must establish the loss with "'reasonable certainty.'" UST Corp. v. General Road Trucking Corp., 783 A.2d 931, 941 (R.I. 2001). This standard applies as well to cases in which a plaintiff alleges the loss of future profits because of personal injury. See 22 Am. Jur. 2d Damages §§ 635, 1015 (1988). ..... Thus, to recover future lost profits in a personal injury action, a plaintiff must meet both the requirements of proximate cause and reasonable certainty. See id. at §§ 634, 635, 1015. Although the standard of reasonable certainty does not require mathematical certainty, an estimate of future lost profits may not be based entirely upon speculation and conjecture. UST Corp. [v. General Road Trucking Corp. et al., 783 A.2d 931, 942; 2001 R.I. LEXIS 223; (R.I. 2001)].

There, the Supreme Court stressed that Sweet's claim was not supported by expert testimony and his damages claim was grounded in his own testimony and conjecture respecting his estimates and experience in the business. Similarly, Valvo's claim is also not supported by expert testimony but rather is based solely upon his own testimony and that testimony is replete with conjecture, speculation and guesswork. (He concedes he has not started a new venture since 1988. See Dep., p. 10) For example, plaintiff produced jewelry sales records of his "main business" ML Roberts, but nothing was produced or exists for V&M Holding:

> Q. Would there be similar [sales] records for V & M Holding
> Company?
> A. Not as of yet because we have not done any
> business like this for V & M yet.
> Q. You mean on eBay?
> A. Right. (Plaintiff's Dep., p. 14)

As such, even if plaintiff's claims were cognizable under the FCRA, which they are not. His damages claim would fail. Thus, plaintiff's claims for damages relating to the new eBay business are too speculative as a matter of law and Trans Union is entitled to judgment on the business loan application claims.

**D. Plaintiff's "proofs" respecting causation and harm are legally insufficient.**

The elements of an FCRA §1681e(b) claim are well established:

> (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; ***(3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.***

Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996) (emphasis supplied). *See also* Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-1161 (11th Cir. 1991); Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D. NY 1994); Morris v. Credit Bureau of Cincinnati, Inc., 563 F. Supp. 962, 967 (S.D. Ohio 1983); Bryant v. TRW, Inc., 487 F. Supp. 1234, 1238 (E.D. Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir. 1982).

Plaintiff claims the bankruptcy information in his Trans Union consumer reports caused adverse credit actions by credit grantors. However, the applications were largely for ***business*** credit for a new venture he wanted to start through a corporation, V&M Holding Company. As set forth supra, business transactions are not actionable under the FCRA. With respect to the remaining applications, plaintiff cannot establish causation and Trans Union is entitled to judgment as a matter of law.

**1. Plaintiff has adduced no evidence that he suffered an adverse Credit action as a result of Trans Union's reporting of Inaccurate information.**

Plaintiff must show that inaccurate information reported by Trans Union caused him to suffer harm. As the Court of Appeals held in Cahlin, *supra*:

> We need not reach the substance of Cahlin's FCRA claims against TRW because we find that he has utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate TRW credit report. Fed.R.Civ.P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."
>
> * * * *

> We stress that [plaintiff] had the affirmative duty of coming forward with evidence supporting his claim that [the consumer reporting agencies] alleged inaccurate report caused him harm. 936 F.2d at1160-1161

*See also* Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001) *cert den.*122 S.Ct. 346, 151 L.Ed.2d 261 (reversing jury verdict due to, *inter alia*, absence of evidence that the defendant's consumer report caused the plaintiff an adverse credit action); Obabueki v. Choicepoint, Inc., 236 F.Supp.2d 278 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003) (jury verdict of $450,000 set aside due to lack of causal connection between employment denial and consumer report); Heupel v. Trans Union LLC, 193 F. Supp. 2d 1234, 1241 (N.D. AL 2002) (granting summary judgment due to lack of causal connection between allegedly inaccurate information and denial of credit). Riley v. Equifax Credit Info. Servs., 194 F.Supp.2d 1239 (S.D. AL 2002) (granting summary judgment, *inter alia*, on the plaintiff's failure to demonstrate causation and harm); Thomas v. Gulf Coast Credit Servs., 214 F. Supp. 2d 1228 (M.D. AL 2002) ((same) "Of course, the FCRA's enforcement mechanisms permit relief only upon a showing that Plaintiff suffered damages as a result of Defendants' actions."); Lee v. Experian Info. Solutions, 2003 U.S. Dist. LEXIS 17420, *16 (N.D. IL October 1, 2003) ("Lee has produced neither any documentary (or other) evidence indicating that he was denied credit at all nor any evidence he was unable to secure credit because of the inaccurate inclusion of [credit information] in his credit report.").

Here, Plaintiff has utterly failed to present any evidence tending to show that he was denied credit as a result of a Trans Union consumer report or if there was a denial, he suffered any harm. Although he ***identified*** numerous applications in discovery, he has utterly failed to submit any admissible evidence to meet his burden on this issue of a denial or causation of harm.

**i. Citizens Bank – auto loan.**

Plaintiff claims he applied for an auto loan with Citizens Bank in "approximately 10/03." (See Answer to Interrogatory 11, Exhibit "5") However, the transaction is entirely undocumented and he has utterly failed to show that inaccurate Trans Union credit information caused him to suffer an adverse action or unfavorable interest rate. In fact, he testified that he received the loan and it was for a car he keeps in Florida. (See Dep., p 71) Therefore, Trans Union is entitled to summary judgment on Plaintiff's claims in connection with this application.

**ii. Sovereign Bank - unknown.**

Plaintiff's Interrogatory answers refer to an application with Sovereign Bank in "approximately 10/03" but there is no proof that the application was denied or adversely impacted and no documentation. Indeed, there is no evidence that a Trans Union consumer report was even considered in connection with any application.

**iii. American Mortgage – home refinance.**

Plaintiff's Answers to interrogatories identifies American Mortgage as an entity where he sought refinancing for his residential mortgage, but there is no evidence (or really allegation) connecting any harm to this event. With respect to the loan, plaintiff testified:

> Q. Do you recall the rate you were able to get?
> A. Not off the top of my head.
> Q. Was it a favorable rate based on the then current
> market conditions to your knowledge?
> A. I think from when I talked to him to when I
> did it it was about half a point difference. It
> took him sometime I think to find me something.
> But I'm not sure. But I think it was a quarter
> to a half difference.
> Q. Because of the delay or because of your report,
> do you know?
> A. That I couldn't answer you. (Plaintiff's Dep. P 50)

Plaintiff's testimony on this point is a nullity: he does not know what rate he was offered or has; whether the rate was impacted and if so why. Plaintiff has simply adduced insufficient

evidence to survive summary judgment. *See* Philbin, *supra*, "hearsay statement[s] by...unknown individual[s] [are] not capable of being admissible at trial... and could not be considered on a motion for summary judgment. Philbin, 101 F.3d at 961, FN1 (*citing* Petruzzi's IGA Supermarkets v. Darlington Delaware Co., 998 F.2d 1224 (3rd Cir.) *cert den.* 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d. 455 (1993) (*internal quotations omitted*).

Plaintiff barely alleges, much less proves, he received unfavorable terms for credit because of inaccurate credit information; he has not produced a single document or adduced testimony to support the assertion. Accordingly, his claims connected to the American Mortgage Refinance fail and Trans Union is entitled to judgment as a matter of law.

**2. Plaintiff's has adduced insufficient evidence, as a matter of law, to support his claim for emotional distress.**

Instantly, plaintiff made only one dispute to Trans Union in September 2002 and there were no other written disputes or other efforts to resolve the inaccuracy. Plaintiff waited almost one and one half years before filing this civil action in February 2004. That history is consistent with plaintiff's utter failure to connect any emotional distress to his FCRA violation allegations. In fact, plaintiff's Initial Disclosures contain the only hint that plaintiff even makes such a claim. There, plaintiff identified his "damages claimed" as "emotional distress resulting form the loss of credit, business development and business reputation." As set forth more fully above, plaintiff is not entitled to any harm arising out of failed applications for business credit. Thus, any alleged stress connected to such denials likewise is barred.

Plaintiff expressly admitted he sought no medical treatment in connection with this matter. (See Answer to Interrogatory 15, Exhibit "5") Most significant, is plaintiff's answer to Trans Union's damages Interrogatory 16 which refers only to actual damages connected to the

business credit and the sale of the zero coupon tax free bond. (See Answers to Interrogatories, Exhibit "5") Plaintiff's failure to identify or present any emotional harm connected to an FCRA violation is fatal to his claim.

In Cousin, *supra*, the Court held that such testimony, without corroborating testimony or other evidence of actual harm, was insufficient to sustain an emotional distress claim under federal law:

> [A] jury's award for emotional distress must be supported by evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others . . . [T]o establish intangible loss, *Carey* requires "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." 245 F.3d at 371 *quoting* Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978).

Plaintiff's scant reference to emotional distress is even less compelling to those held insufficient in Cousin. As such, plaintiff's "proofs" are insufficient as a matter of law because there is no evidence a Trans Union report or its conduct caused him any stress or other physical harm.

**3. Plaintiff's claim of damages arising out of the sale of tax free bonds Is insufficient as a matter of law.**

The final damage claim arises out of plaintiff's sale of tax free bonds but the claim fails for want of proof. Plaintiff stated he desired to give his daughter $40,000.00 toward the construction of her new home. He testified his application for a Fleet home equity loan was denied and, as a result, he was "forced" to sell $150,000.00 of tax free bonds "before maturity." See Answer to Interrogatory 16[3] He claims he sold bonds worth $150,000.00 at maturity for

[3] 16. State precisely the nature and amount of each special, financial, economic, or other such damage(s) you claim to have personally suffered, including any financial opportunities you claim to have missed, the manner by which such damage(s) was calculated, and identify all documents which refer to your answer to this interrogatory.

$127,000.00, but that assertion is made in a vacuum and proves nothing with respect to alleged damages. Plaintiff has not and cannot calculate the actual damages suffered, if any. (His response to Interrogatory 16 concedes as much: "I have not yet computed all of the damages.") This is so, *inter alia*, because plaintiff testified he does not know the amount of the home equity loan he applied for, and there is no record of the interest rate he would have been charged if the loan was granted. Plaintiff's Dep., p. 33.

However, discovery is now closed. Therefore, plaintiff's allegation of damages will never amount to anything more than his unfounded speculation about how much the Fleet loan (of an unknown amount and interest rate) may have cost him, as compared to the loss, **if any**, incurred selling the tax free bond.

Plaintiff has not and cannot corroborate this nebulous claim and there is no testimony to establish (or explain) the claim to a jury or this Court. Accordingly, the claim is without a scintilla of support and insufficient to survive summary judgment.

**E. Plaintiff Has Failed To Adduce Evidence of Willful Noncompliance with the FCRA**

The FCRA is not a strict liability statute. Sarver v. Experian Information Solutions, 390 F.3d 969, 971 (7th Cir. 2004); (citing Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994))(FCRA "'does not make reporting agencies strictly liable for all inaccuracies'") (quoting Cahlin, *supra*, 936 F.2d at 1156. A consumer reporting agency's FCRA obligation is to maintain

---

ANSWER: See Answers to Interrogatories 11 and 12 [at p. 5 *supra*]. In addition, because I was unable to refinance my home, I had to sell tax free bonds before maturity. I sold bonds which were worth $150,000.00 at maturity for approximately $127,000.00. I also incurred a tax liability that in the approximate amount of $3,000.00 to $3,500.00. I have not yet computed all of the damages. This answer will be supplemented shortly.

No supplement was ever served.

reasonable procedures, not perfect ones. Anderson v. Trans Union, et al, 367 F. Supp. 2d 1225; 2005 U.S. Dist. LEXIS 8095 (W.D.WI 2005) 15 U.S.C. §1681(b); §1681i(a)(5)(C); Sarver, 390 F.3d at 972 ("given the complexity of the [consumer credit reporting] system and the volume of information involved, a mistake does not render the procedures unreasonable"). In Anderson, *supra*, the Court noted:

> Defendant's failure to catch the inaccurate notation that was imported into plaintiffs' Visa account and the human error that resulted in the incomplete correction of its records on January 8, 2003 do not show that its procedures were unreasonable. 367 F.Supp at ___; LEXIS at pp. *26-27.

Here plaintiff has not and cannot maintain a claim that Trans Union's procedures unreasonable; he has completely failed to adduce evidence that Trans Union's procedures willfully violated the FRCA. As Ms. Little testified, a "mistake" was made by an operator, nothing more and certainly nothing unreasonable. The FCRA specifically limits punitive damages to circumstances where the violation of a requirement of the FCRA was "willful." *See* §1681n, Civil Liability for Willful Noncompliance. Courts have consistently disallowed punitive damages absent special and aggravating circumstances.

In Casella v. Equifax Credit Info. Servs., 56 F.3d 469 (2nd Cir. 1995)(Frank J. Coffin sitting by designation), the Court of Appeals, citing long established FCRA punitive damages principles, affirmed the trial court's grant of summary judgment stating as follows:

> [Defendants'] course of conduct does not support the kind of 'conscious disregard' or 'deliberate and purposeful' actions necessary to make out a claim for willful noncompliance under the FCRA. 56 F.3d at 476 (citations omitted).

In Cousin, *supra,* the Fifth Circuit vacated and rendered a jury's punitive damages verdict, stating:

> "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." Fischl v. General Motors Acceptance Corp., 708 F.2d 143, 151 (5th Cir.1983). In Pinner [v. Schmidt, 805 F.2d 1258 (5th Cir. 1991)], we noted that "willful" is a word of many meanings and that its construction is often influenced by its context. *See* Pinner, 805 F.2d at 1263. In

> concluding that the consumer reporting agency in that case did not commit a willful violation, we remarked that there was no evidence suggesting that the agency "knowingly and intentionally committed an act in conscious disregard for the rights of others." Id.; see also Philbin, [*supra*] 101 F.3d at 970; Stevenson, 987 F.2d at 293. Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments. See Pinner, 805 F.2d at 1263. In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer. See id. (discussing Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir.1976)); see also Stevenson [v. TRW, Inc., 987 F.2d 288, 294 (5th Cir. 1993)].

*See also* Dalton v. Capital Associated Industries, Inc., 257 F.3d.409, 418 (4th Cir. 2001).

Here, as in Casella, Dalton and Cousin, nothing was concealed or misrepresented to Plaintiff. Trans Union did not disregard Plaintiff's FCRA rights. Trans Union promptly responded to his single dispute and sent him the reinvestigation results with the verification. There is no evidence that Trans Union misrepresented or concealed anything from Plaintiff or acted in conscious disregard of its duties under the FCRA to reinvestigate his single dispute and in connection with the furnishing of his file. Therefore, Trans Union is entitled to summary judgment on Plaintiff's punitive damages claims.

**F. Trans Union is entitled to summary judgment on plaintiff's Defamation claim.**

Trans Union is entitled to a qualified immunity under the FCRA, §1681h(e), which provides in pertinent part:

> (e) Limitation of liability. Except as provided in sections 616 and 617 [§§1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency... except as to false information furnished with malice or willful intent to injure such consumer.

(*See* Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir.1980), *cert. denied*, 449 U.S. 835 (1980); Bloom v. I.C. Systems, Inc., 972 F.2d 1067, 1069 (2nd Cir. 1992); Cousin v. Trans Union Corp., 246 F.3d 359, 375-376 (5th Cir. 2001). As set forth in Thornton, *supra*,

> Section 1681h(e) is recognized as providing qualified immunity for consumer reporting agencies with an exception from such qualified immunity being made for actions pursuant to sections 1681n and 1681o.... **Such an exception was not meant to lessen the standard necessary to overcome this qualified immunity in defamation actions.** (emphasis in original) (**Bold** supplied) 619 F.2d at 703

Plaintiff has alleged but cannot prove Trans Union acted with malice or willful intent to injure him. As set forth *supra*, Trans Union's conduct was a mistake, not a willful violation of the FCRA and plaintiff has not adduced a scintilla of evidence to the contrary. Thus, Trans Union is entitled to summary judgment on plaintiff's claim of defamation.

## III. CONCLUSION

For all the above reasons and authorities, Defendant Trans Union LLC respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
Timothy P. Creech
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*
DATED: June 20, 2005

CERTIFICATION

I, the undersigned, hereby certify that on the 20th day of June, 2005, a copy of the within Trans Union LLC's Motion for Summary Judgment was mailed to the following Attorney of Record for the Plaintiff:

Charles N. Redihan, Jr., Esq.
Kiernan Plunkett & Redihan
91 Friendship Street
Providence, RI 02903

Kevin C. Glavin