03 027

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

JOHN VALVO

VS C. A. NO. 04 70S

TRANS UNION, LLC

**OBJECTION TO MOTION TO SUMMARY JUDGMENT**

Now comes the plaintiff, John Valvo, and objects to defendant, Traun Union, Inc.'s, motion for summary

judgment.

CHARLES N. REDIHAN, JR. (1810)
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900
(401) 331-7123 FAX

TO Kevin C. Glavin, Esq.
Cutcliffe, Glavin & Archetto
155 South Main Street, Suite 300
Providence, RI 02903

Mark E. Kogan, Esq.
Bruce S. Luckman, Esq.
Timothy P. Creech, Esq.
Saltzberg,Trichon,Kogan & Wertheimer,PC
1818 Market St., 30th Floor
Philadephia, PA 19103

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: July 25, 2005

03 027

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

JOHN VALVO

VS C. A. NO. 04 70S

TRANS UNION, LLC

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Facts and Travel of the Case**: Plaintiff, John Valvo, is a resident of Johnston, Rhode Island, and a "consumer" as defined by the Fair Credit Reporting Act 15 U.S.C., 1681 et seq. (hereinafter the "FCRA or the Act) §1681a(f). Defendant Trans Union, LLC qualifies as a "consumer reporting agency" under the Act. Plaintiff alleges that defendant has violated the Act both by issuing credit reports containing inaccurate information about plaintiff and by failing to follow reasonable procedures to prevent such inaccurate information from lenders. As a result thereof, John was denied credit, forced to pay a higher interest rate for credit and to liquidate assets prematurely. He also suffered humiliation, embarrassment and anxiety.

Plaintiff is married and has three adult children, John J. Valvo, (hereinafter "John J") Stephanie Valvo-Parker and Robert D. Valvo. Plaintiff and his son, John J., have the same first and last name but the plaintiff does not have a middle initial. Their birthdates and social security numbers differ.

In 1998 John J. filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Act. When he was subsequently discharged, a number of his creditors wrote

off his debts as uncollectible. These creditors then reported John J.'s bankruptcy and credit history to defendant, Trans Union. Plaintiff, on the other hand, has never filed for bankruptcy and has consistently maintained a strong credit history. Beginning in 2002, John J.'s bankruptcy and unfavorable credit experiences was entered on plaintiff's credit reports.

The plaintiff is fifty percent (50%) shareholder of two Rhode Island Subchapter S corporations, M. L. Roberts, Inc. ("M.L. Roberts") and V. & M. Holding Company ("V & M"). M. L. Roberts is an importer of jewelry components which it sells mostly to manufacturers. In recent years M. L. Roberts has also begun selling small lots of jewelry over the internet on eBay. V & M is primarily a real estate holding company, but it has on a few occasions sold small amounts of wholesale jewelry components.

Because of the success of M. L. Roberts' eBay venture, plaintiff decided in the summer of 2002 to open a second web site. He envisioned the second website operating in exactly the same manner as the first except that it would be owned by V & M. All expenses and fees due eBay for the operation of an internet website must be paid to eBay by a credit card through an internet website known as Pay Pal. In order to open the second internet site, in early or mid-August of 2002, plaintiff submitted an application for a business credit card for V & M to Fleet Bank. In September, plaintiff was formally notified by Fleet that the application had been denied due to the notation on plaintiff's personal credit report that he had filed for bankruptcy.

The credit report had been issued by Trans Union. After the application was denied, plaintiff requested and received a copy of the report from defendant. The report contained an entry that plaintiff had filed bankruptcy and listed a number of

accounts supposedly belonging to him which had been seriously in arrears or written off because of the bankruptcy. At least seven of these accounts were John J.'s accounts.

On or about September 17, 2002, plaintiff notified the defendant by telephone that there were serious errors on his credit report. On September 23, 2002, John Valvo sent defendant a letter outlining the inaccuracies and enclosed a copy of the credit report on which he marked the inaccurate accounts. He later received a revised credit report on which several of the inaccurate entries had been deleted. The personal bankruptcy and at least one other inaccurate account entry remained on the report. Thereafter, plaintiff telephoned defendant to dispute the inaccuracies in the second report. The defendant's customer service representative abruptly ended the telephone conversation by hanging up on the plaintiff.

In late October or early November of 2002, plaintiff applied for a home equity line from Fleet Bank. He intended to give his daughter, Stephanie, $40,000.00 from the line of credit for a down payment on piece of real estate where she and her husband intended to build a home. In mid November, plaintiff learned informally from the manager of the local Fleet bank branch that his loan application had been denied. Fleet Bank later sent plaintiff a formal denial letter dated November 26, 2002 which indicated that the application had been denied because of the Trans Union credit report entry. Due to the denial, plaintiff was forced to liquidate tax free RISDIC bonds before maturity in order to give his daughter the money he had promised her. At the same time, plaintiff also gave his other children $40,000.00 each. The proceeds of the sale of the bonds were $127,500.00 for bonds having a face value of $150,000.00. Plaintiff suffered a loss of $22,500.00 and was also required to pay taxes because the bonds had

been sold before maturity. Had he been able to hold the bonds until they matured, the plaintiff would have received $150,000.00 free of taxes.

In June of 2003, plaintiff applied to refinance his home mortgage. Because of his previous experiences, he was concerned that he might again be embarrassed and denied credit because of the inaccuracies in the Trans Union report. Therefore, he sought financing from a mortgage company where he had a strong personal relationship due to past transactions. The interest rate that hew was charged was approximately one half percent (1/2 %) for a 30 year mortgage over what he would have obtained from a bank. He was eventually able to refinance with mortgage company. Trans Union continued to produce inaccurate credit reports about plaintiff. The bankruptcy entry was not removed until after the instant action was filed in February, 2004.

Defendant maintains that the bankruptcy notation went undetected because of a mistake made by one of its investigators. (See Little deposition p. 74, Exhibit 1). When a consumer disputes an entry from a public record, such as a judgment or bankruptcy, Trans Union generates a from and completes the left side of it with personal identifying information about the consumer. This form is then sent to a vendor with whom Trans Union has contacted to search public records (Little deposition pp 69-70, Exhibit 2.) The vendor enters corresponding information on the right side of the form and indicates whether or not the information pertains to the same person. In this instance, the vendor noted a different middle initial and Social Security Number for the debtor. (Little depo. pp 70-71, Exhibit 3.) The investigator, Brian Cauthorne, was a temporary employee who failed to note the differences and correct the report (Little depo pp. 73-74, Exhibit 4). Tran Union's only quality control procedure was to have a supervisor review miscellaneous pieces of Cauthorne's work which were selected at random. No

computer cross checking of pertinent identifying information was performed. (Little depo. p. 76, Exhibit 5).

STANDARD

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) In considering the motion, the court views the evidence and any inferences there from in the light most favorable to the non moving party. Barron v. Trans Union, 82 F. Supp. 2d 1290 (D.C. M.D. Ala. 2000) citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed., 2d 142, 90 S. Ct. 1598 (1970). The court's role is to determine if a genuine issue of material fact exists rather than deciding that issue. Barron, ibid. After the motion is filed, the non moving party has the burden of showing the existence of a genuine material factual issue for trial. " An action is devoid of a material issue for trial" where the record taken as a whole could not lead a rational trier of fact to find for the non moving party." Barron id. at p. 1291 .

ARGUMENT

I. Plaintiff has a cognizable Claim under the F.R.C.A.

As the Court is well aware, a motion for summary judgment is concerned with finding questions of fact rather than deciding them. In the instant matter, there are numerous questions of fact which warrant denial of the motion. The requirements for a valid F.R.C.A. claim are: (1) inaccurate information was included in the consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to ensure maximum possible accuracy ; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inaccurate entry. Philbin v Trans Union Corp., 101 F 3d 957, 963 (3rd Cir 1996). If an inaccuracy appears in a credit

report, the agency can escape liability by showing that its policies and procedures are reasonable. Cahlin v GMAC, 936 F 2d, 1151 (11th Cir. 1991). Reasonable procedures are those that "a reasonably prudent person would undertake under the circumstances". Bryant v. TRW, Inc., 689 F 2d 72, 78 (6th Cir. 1982). Moreover, judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm to the consumer from the inaccuracy against the burden of preventing such an inaccuracy. Richardson v. Fleet Bank of Massachusetts, 190 F Supp 2d 81, 86 (D.MA 2001) As one court has observed, the reasonableness of the agency's procedures "will be a jury question in the overwhelming majority of cases". Cahlin, ibid. The Cahlin court went on to note that the agency can "usually prevail" (on a summary judgment motion) only by showing that the credit report was "accurate" Cahlin, id.

In the instant matter, defendant concedes that the report was inaccurate. Defendant's Statement of Undisputed Facts 14 "Trans Union's Investigator made a mistake when he left the bankruptcy on plaintiff's file following the communication with Hogan". Defendant admits that the bankruptcy should not have been on the report. Neither plaintiff nor his wife has ever filed for bankruptcy (see Valvo depo. p 14, l. 22-25.) (Exhibit 6). The entry is clearly inaccurate.

At this point, the question to be considered is the reasonableness of defendant's procedures. The affidavit of plaintiff's expert, Richard Lefebvre, categorically states that Trans Union's procedures are not reasonable (see Lefebvre Affidavit, para. 7). Mr. Lefebvre has a strong background in the credit industry and is familiar with the facts of this case. He has interviewed the plaintiff. He is also familiar with Trans Union's procedures through first hand experience as an employee of Trans Union affiliate and through his involvement as an expert in numerous cases in which Trans Union was a

defendant. His opinion indicates a clear question of fact exists about whether or not Trans Union's procedures are reasonable.

Causation

Defendant's arguments regarding causation overlook two very important pieces of evidence. Both the first V&M credit card and the Fleet line of credit applications were denied because of the inaccurate bankruptcy entry on plaintiff's personal credit report . Fleet's denial letters state this unequivocally (see Lefebvre's affidavit, Exhibit 7). There is a definite causal connection between the bankruptcy entry on the plaintiff's credit report and the denial of credit in these two instances. Defendant's arguments in this regard are without merit. A valid question of fact exists and the motion should be denied with respect to this claim.

Damages

Plaintiff was obviously harmed by defendant's negligence and lack of reasonable procedures. Defendant's credit report was the basis upon which Fleet denied plaintiff credit. Defendant asserts plaintiff has suffered no damages, but plaintiff's testimony is uncontradicted that after the line of credit was denied, he sold $150,000.00 in tax free bonds for approximately $127,000.00 and also incurred a tax liability. ( See Valvo Interrogatory Answer No. 16, Exhibit 8). He also was forced to refinance his home mortgage at a higher rate because of his concern that the bankruptcy remained on his credit report. Contrary to defendant's contention, plaintiff did testify that the refinanced at an interest rate that was ¼ to ½ percent point higher than was available from conventional lenders. He also testified that he intended to borrow between $145,000.00 and $150,000.00. (See Valvo depo. pp. 49 to 51, Exhibit 9). The amount of damages is a factual question about which there is competent evidence upon which a

fact finder could decide that the plaintiff was directly harmed by defendant's actions. This evidence presents a question of fact for the jury.

## ISSUES OF WILLFUL VIOLATION OF THE FCRA HAVE BEEN FOUND IN INSTANCES IN WHICH A DEFENDANT'S CONDUCT WAS RECKLESS AND IN CONSCIOUS DISREGARD FOR THE RIGHTS OF OTHERS.

The viability of plaintiff's claim for punitive damages hinges on whether the defendant acted willfully or unreasonably in these circumstances. Under the FCRA to constitute a willful noncompliance, a party must have knowingly and intentionally committed an act in conscious disregard for the rights of others. Stevenson v TRW, Inc., 987 F 2d 288, 293, (5th Cir. 1993). However, a plaintiff need not show malice or evil motive, id at p. 294.

In this case, there is a sizeable amount of evidence to show the defendant's procedures were not only unreasonable but that its conduct was reckless and in conscious disregard for plaintiff's rights. Once plaintiff notified defendant that he disputed the accuracy of his credit report, Trans Union handled the dispute in the ordinary course of business. Each inaccurate entry was sent to a different sourcel for review. Each dispute is reviewed by isolating certain items of personal information and verifying the same (e.g. middle initial, date of birth). As each dispute form is returned to Trans Union, the form is not cross-referenced to verify accuracy. Trans Union relies on a single employee, in this case a temporary worker who shortly thereafter left the plaintiff's employer, to cross check the information on the dispute forms. If defendant has cross referenced at this point by date of birth or social security number, there is a

strong likelihood the plaintiff's data reported bankruptcy on plaintiff's credit report would have been discovered.

In this instance, the investigator was a temporary worker with little, if any, supervision. There is evidence of the defendant's quality assurance practices and its failure to maintain procedures for checking and reviewing of this employee's work product to assure the maximum possible accuracy. Plaintiff's expert is of the opinion that the failure to have procedures in place to check the employee's work was not only unreasonable but reckless. (See Lefebvre affidavit, Exhibit 7).

Subsequently, plaintiff received a corrected copy of his credit report with the erroneous bankruptcy still reported. Plaintiff once again phoned the defendant to determine why the bankruptcy was not removed. The plaintiff received no other assistance at this point in remedying the same and while plaintiff was discussing the problem, defendant's employee hung up on him. (Plaintiff's depo p. 56, Exhibit 10). This type of action or conduct is an overt and intentional act by Trans Union and if viewed collectively, demonstrate that the defendant's procedures are more than just unreasonable. It demonstrates a reckless indifference for plaintiff's rights.

After the dispute review and verification process, the bankruptcy remained and the defendant continued to report it even after receiving notice from the plaintiff via telephone that it was erroneous. The inaccuracy was a direct result of defendant's failure to maintain and implement reasonable procedures to assure maximum possible accuracy. The defendant could have implemented safeguards to prevent this type of error; however, defendant did not.

Plaintiff has presented sufficient undisputed facts to satisfy the "willfulness" standard under the FCRA. Defendant's qualified immunity protection under the Act

is consequently lost in this case due to the nature of its conduct. As a direct result of defendant's conduct, plaintiff has suffered injuries caused by the inclusion of inaccurate entries on his credit report. Plaintiff submits that genuine issues of material fact exist with respect to defendant's procedures and actions that warrant submitting plaintiff's punitive damages to the jury.

State Law Claims, including Business Damages are cognizable under the FCRA.

The FCRA provides in part "no consumer may bring an action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of any information against any consumer reporting agency ...except as to false information furnished with malice or willful intent to injure such consumer." 15 USC 1681(h)(e) The defendant contends that the plaintiff has adduced no evidence to prove that Trans Union procedures were unreasonable and that its actions willful rather merely a failure to maintain procedures. In other words, did the defendant follow reasonable procedures in issuing and reinvestigating the plaintiff's credit report? The answer to the questions is no.

All of the facts and circumstances in this case point to reckless conduct by the defendant and a conscious disregard for the plaintiff's rights. Due to this reckless conduct, the plaintiff raises serious factual issues as to whether defendant's conduct rose to the level to find it liable under the willful noncompliance part of the FCRA. Trans Union is not entitled to summary judgment as a matter of law due to the fact that it lost its qualified immunity though its conduct, actions and failure to maintain, follow and implement reasonable procedures to assure the maximum accuracy of its reporting. There is sufficient evidence for a jury to find that the defendant's conduct was willful and violated the FCRA. As a result, all State law claims would not pre-empted by the

FCRA. Frost v. Experian & TRW Inc. 1999 WL 287373 (S. D. N.Y. 1999) Damages accruing out of commercial business transactions as well as common law claims are proper if there was evidence of willful conduct . The type of business damages alleged by plaintiff are not speculative but can be established within reasonable certainty and are directly caused by Trans Union.

Similarly, the same applies with respect to plaintiff's claim for defamation. Defamatory statements were published to plaintiff's bank in Johnston, Rhode Island on at least two occasions. Defendant claims it is entitled to summary judgment upon plaintiff's claim for negligent information of emotion distress for failure to seek medical treatment. (See Valvo depo . 70, Exhibit 11). However, medical treatment is not essential to recovery. "[A] jury's award for emotional distress must be supported by evidence of genuine injury, such as evidence of the injured party's conduct and the observations of others...[T]o establish intangible loss, *Carey* requires 'a degree of specificity which may include corroborating testimony or medical or psychological evidence..." Cousin V. Trans Union Corp. 246 F.3d 359at 371(5th Cir. 2001) *quoting* Carey v. Piphus, 435 U.S. 247, 89 S. Ct. 1042, 1052, 55 L.Ed.2d. 252 (1978). See also Valvo affidavit indicating his embarrassment as a result of Trans Union's actions. (Exhibit 12)

The defendant, Trans Union, is not entitled to summary judgment on any of plaintiff's claims. The claims are proper and cognizable under the FCRA. Trans Union has lost its qualified immunity for acting recklessly and with conscious disregard for

the rights of plaintiff. Plaintiff has documented genuine issues of fact which should be decided by the jury. For the reasons herein set forth, Trans Union's motion for summary judgment should be denied.

CHARLES N. REDIHAN, JR. (1810)
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900
(401) 331-7123 FAX

TO Kevin C. Glavin, Esq.
Cutcliffe, Glavin & Archetto
155 South Main Street, Suite 300
Providence, RI 02903

Mark E. Kogan, Esq.
Bruce S. Luckman, Esq.
Timothy P. Creech, Esq.
Saltzberg,Trichon,Kogan & Wertheimer,PC
1818 Market St., 30th Floor
Philadephia, PA 19103

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: July 25, 2005