IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN VALVO, Plaintiff, v. TRANS UNION LLC, Defendant. | C.A. No: 04-70-S |

**TRANS UNION LLC'S REPLY TO PLAINTIFFS' OBJECTION TO TRANS UNION'S MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in Reply to Plaintiff's Objection to Summary Judgment:

## I. INTRODUCTION

Trans Union's opening brief demonstrates that it is entitled to summary judgment on all of Plaintiff's claims. Plaintiff's Objection, without proper affidavit, relies almost exclusively upon unfounded assertions and observations of Plaintiff's counsel and fails to demonstrate the required elements of an FCRA claim or to identify a single ***material*** issue of fact in dispute.

First, he has utterly failed to oppose and effectively conceded that V&M Holding's applications for credit are not cognizable under the FCRA (Fleet business credit cards and Citizen commercial mortgage). Second, he did not oppose or object to the motion on the grounds that insufficient evidence was presented respecting the Citizens Bank or Sovereign Bank transactions.

To the extent he did oppose the motion, plaintiff failed to submit evidence. Plaintiff's Objection says, but does not present evidence or affidavits to prove that Trans Union consciously

disregarded or willfully violated Plaintiff's FCRA rights. His assertions are minimally based upon an affidavit from Richard LeFebvre. But, as more fully set forth in Trans Union's Motion to Strike, that untimely affidavit, by a witness (not an expert) identified on the last day of discovery should be stricken. Even if timely, Mr. LeFebvre was **not** identified as an expert so his "opinions" are not properly before the Court and are irrelevant. Further, even if the Affidavit were considered, which Trans Union submits would be highly prejudicial and unfair, the Affidavit is woefully inadequate and the unsupported comments of the "witness" do not establish a willfulness claim.

Plaintiff's attorney argues, but has no evidence, that plaintiff was somehow damaged because he sold bonds instead of borrowing money; plaintiff speculates but presents no evidence that that or how the event harmed him. Plaintiff further speculates that his home refinance was somehow delayed or impacted, but he cannot say how (or how much) and presents no closing documents or other evidence connected to his interest rate. Plaintiff does no oppose Trans Union's central position that V&M Holding's business transactions are not cognizable under the FCRA.

Accordingly, Trans Union is entitled to summary judgment on all of Plaintiff's claims.

Simply stated, Plaintiff's Objection does not demonstrate the existence of a "genuine issue as to any material fact" as required by Fed.R.Civ.P. 56(c). A "genuine" issue requires that a summary judgment opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiff's Opposition is largely contentions and commentary of Plaintiff's counsel based upon his unfounded observations and descriptions. As cogently stated by this Court in Harrison v. MBNA, et al, C.A. No. 03-75S,

Memorandum and Order dated March 21, 2005, adopted in full by the District Judge, July 13, 2005: limns

> To oppose the motion successfully, the non-moving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby Inc, 477 U.S. 242, 256-57, 106 S.Ct. 2505 2514-15, 91 L.Ed.2d 202 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st. Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 1113, 1116 (1st Cir. 1989). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving part." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)

Instantly, Plaintiff failed to present evidence supporting the crucial elements of his FCRA claims. With respect to his home refinance (America Mortgage), plaintiff failed to present competent evidence such as closing documents or an affidavit to establish the difference between the rate he "should" have been granted as opposed to the rate he was granted. Instead he continues to rely upon unsupported speculation by plaintiff and his counsel about what the rate was or might have been. The damages associated with the sale with the sale of the tax-free bond are likewise without any competent support in the record. Plaintiff to date has not (and cannot) prove the difference, if any, between the cost to him to borrow the money he wanted as compared to selling the bonds. This is so because he does not know and cannot prove the home-loan interest rate he sought (or could have obtained). Thus, he cannot calculate the difference between that loan cost and the cost (or loss?) incurred as a result

of the sale of the bonds. Of course, the unfounded claim is further muddled by his admission that he gifted the all of the proceeds of the sale of the bonds.

That sort of conjecture is not sufficient to oppose summary judgment. As stated in Local Rule 12.1:

> **(d) *Uncontroverted Facts*. In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials which the court may consider under Rule 56 of the Federal Rules of Civil Procedure.**

Here, plaintiff has failed to controvert the facts set forth in Trans Union's Rule 12.1 Statement with a competent affidavit or other evidence. Because plaintiff has failed to present a sufficient opposition, either factually or on legal grounds, Trans Union is entitled to summary judgment as a matter of law.

## II. ARGUMENT

### A. Plaintiff Effectively Concedes That His Claims Arising Out of Business Transactions of V&M Holding Are Barred Under the FCRA and Trans Union Is Entitled to Summary Judgment on Plaintiff's Claims Which Arose Out of Such Transactions.

Plaintiff fails entirely to oppose or object to Trans Union's central assertion that business transactions and related damages are not cognizable under the FCRA, Title VI of the ***Consumer*** Credit Protection Act. Trans Union's opening Memorandum established that the applications admittedly made by V&M Holding (not plaintiff) can not be the basis of an FCRA claim. Indeed, plaintiff's "Statement of Disputed Facts" expressly asserts that "1. V&M Holding was denied a credit card in September of 2002…." There is no dispute the application was made by V&M and not plaintiff. Plaintiff's Objection, page 2, also concedes that the eBay jewelry site was to "be

owned by V&M", not plaintiff. Finally, plaintiff made no effort distinguish the long established precedent cited by Trans Union.

Accordingly, Trans Union is entitled to summary judgment on all claims and damages arising out of the V&M Holding transactions, including plaintiff's claims for humiliation which allegedly resulted from such transactions.

**B. Plaintiff Failed to Present Evidence Sufficient to Sustain a Claim For Punitive Damages**

Plaintiff failed to identify a scintilla of evidence supporting his willfulness claim. There was no misrepresentation or concealment alleged or proven. No intentional or reckless act toward plaintiff alleged or proven. Instead, plaintiff now relies on an unfair characterization of his testimony (unquoted, because the actual language does not fit his needs) in an effort to suggest malevolence (rudeness?) on the part of an unidentified Trans Union telephone operator.

This is not a complex matter. Trans Union misreported a bankruptcy on plaintiff's file and plaintiff made a dispute. After his dispute, plaintiff claims Trans Union acted in conscious disregard for his FCRA rights because one employee mistakenly left on the bankruptcy which verified under plaintiff's son's SSN and another allegedly "hung-up" on him. Plaintiff's willfulness claim is based solely upon the alleged violation of FCRA §1681i which governs the reinvestigation of consumer disputes. See Objection, pp. 8-10 and plaintiff's Statement of Disputed Material Facts, paras. 9, 10, 11 and 12.

As demonstrated in Trans Union's opening brief, FCRA is not a strict liability statute and reasonable, not perfect procedures are required. See Sarver v. Experian Information Solutions, 390 F.3d 969, 971 (7th Cir. 2004); (citing Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994))(FCRA "'does not make reporting agencies strictly liable for all inaccuracies'"; and

Anderson v. Trans Union, et al, 367 F. Supp. 2d 1225; 2005 U.S. Dist. LEXIS 8095 (W.D.WI 2005)). The single mistake made by the employee who failed to recognize the different social security number may not even reach the level of negligence as a matter of law. Here, however, plaintiff purports to ground a willfulness claim on what is undisputedly a mistake, not a willful act in conscious disregard of his FCRA rights.

Plaintiff's assertion regarding the terminated telephone call is not supported by the record and is merely attorney argument which does not meet the requirements of opposing summary judgment.

Plaintiff's brief argues:

> The plaintiff received no other assistance at this point [upon receipt of the corrected copy report] in remedying the same and while plaintiff was discussing the problem, defendant's employee hung up on him. (Plaintiff's depo p. 56, Exhibit 10). This type of action or conduct is an overt and intentional act by Trans Union and if viewed collectively, demonstrate that the defendant's procedures are more than just unreasonable. It demonstrates a reckless indifference for plaintiff's rights. (Memorandum, p. 9)

Plaintiff's depiction of the termination of a single phone call with an unidentified employee on an unknown date is wholly inadequate to meet his burden to establish a cause of action for consciously or recklessly violating plaintiff's FCRA rights. Moreover, the description of the event is completely unsupported by competent evidence. Indeed, plaintiff's deposition testimony on this subject portrays **him** as "indignant" (his words) and he admits he was cause of the alleged hang-up:

> Q. Right. Other than the phone call when you were told you had to send in a letter, this letter that we marked as Exhibit 14 dated September 23, 2002, have you made any other calls or sent any other letters to Trans Union disputing information?

> A. I **think** I called them again. **I think I got rather indignant with them** on the phone that they had not corrected it. Again, this is quite a while ago. I didn't get anywhere with her. I believe she hung up on me. I **did** get indignant with her. (emphasis supplied)
>
> Q. Do you recall -- other than that telephone call, do you recall any letters sent after September 23, 2002 to Trans Union disputing information in your report?
>
> A. Off the top of my head I can't remember. I don't know. (Dep. P. 56)

Plaintiff's admission at deposition that he called Trans Union and became so angry that the unidentified Trans Union employee allegedly hung up on him does not constitute a dispute, much less a conscious disregard of plaintiff's FCRA rights. If plaintiff called and rudely complained and the call was terminated by a Trans Union employee, there is no FCRA violation, much less a conscious disregard for his FCRA rights. Importantly, plaintiff did not testify he made a dispute during the call, only that he "got rather indignant with them on the phone that they had not corrected it." Most important, taken in a light most favorable to plaintiff, the call does not and cannot constitute a dispute or other potential basis of an FCRA violation. There is no disputed issue of fact in the record, only a dispute between the testimony and the spin which plaintiff's counsel unsuccessfully put on the call.

Plaintiff has essentially grounded his willfulness claim upon that "hang-up". But, the undisputed record debunks plaintiff's attorney's argument respecting that event. As such, plaintiff has not met his burden in opposition to Trans Union's motion for summary judgment on plaintiff's willfulness or punitive damages claims. Accordingly, Trans Union is entitled to

judgment as a matter of law on plaintiff's FCRA punitive damages claims and his state law claims.

Finally, plaintiff's counsel argues, without evidence or caselaw, that Trans Union should have somehow implemented procedures for 100% quality control review and/or supervision. However, plaintiff's counsel has presented nothing more than his argument in connection with the contention. Under the circumstances, no reasonable jury could find that the mistake or absence of 100% review was willful. Accordingly, Trans Union is entitled to summary judgment on plaintiff's punitive willfulness and damages claim.

**C. Plaintiff Cannot Establish Any state Law Claim Under Which He Is Entitled To the Damages Sought.**

Plaintiff concedes, as he must, that business transactions are not cognizable under the FCRA. As set forth supra, plaintiff failed to distinguish a single case cited by Trans Union. Instead of surrendering the defective claim, he makes the erroneous and confused assertion that Trans Union's motion must be denied because:

> The claims are proper and cognizable under the FCRA. Trans Union has lost its qualified immunity for acting recklessly and with conscious disregard for the rights of plaintiff. (Objection, p. 11)

However, plaintiff's claims are simply not cognizable under the FCRA. Therefore, Trans Union is entitled to judgment as a matter of law on all of plaintiff's business transaction and damages claims.

Plaintiff's confused assertions regarding the state law claims fail because he has failed to allege or establish any "state law" claim under which he can recover the claimed business damages. Indeed, neither his Amended Complaint nor Objection to Summary Judgment articulates any cognizable claim for the business damages sought. Therefore, even if Trans

Union were not entitled to FCRA qualified immunity, which it plainly is here, plaintiff failed to assert a "state law" claim which conforms with his alleged business transaction claims.

Count I of plaintiff's Amended Complaint asserts an FCRA violation which, of course, does not cover business transactions.

Count II of the Amended Complaint purports to allege a claim under Rhode Island's Deceptive Trade Practices Act ("DTPA"), G.L. 1956 chapter 13.1 of title 6. But, the Rhode Island Supreme Court last year reaffirmed the established rule that DTPA does not allow private causes of action where there is federal supervision over the challenged conduct. In Chavers et al. v. Fleet Bank (RI), N.A. et al., 844 A.2d 666; 2004 R.I. LEXIS 38 (2004), the Supreme Court held:

> Private actions, however, are precluded when the complained of activity is subject to regulation by a government agency. Specifically, the exemption contained in § 6-13.1-4 of the DTPA provides:
>
>> Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States. 844 A.2d at 670.

(See also State v. Piedmont Funding Corp., 119 R.I. 695, 382 A.2d 819 (1978)

In Chavers, *supra*, the Supreme Court affirmed the grant of the defendant bank's motion for summary judgment on the grounds that its credit card activities were subject to regulation by the Office of the Comptroller of the Currency as authorized by the Fair Credit and Charge Card Disclosure Act, 15 U.S.C. §§1601-1667f. That Act is found in Title I of the Consumer Credit Protection Act of the U.S. Code. Congress delegated the Federal Reserve (and the OCC) to

"oversee and monitor" compliance. 844 A.2d at 671-2. Therefore, plaintiffs' private DPTA cause of action was properly precluded.

Instantly, the Consumer Credit Protection Act, Congress empowered the Federal Trade Commission (the "FTC") to oversee and "enforce" the "requirements imposed" by the FCRA. 15 U.S.C. §1681s.[1] The FTC has brought various enforcement actions against the consumer reporting industry in connection with its practices and compliance procedures. (*See e.g.* Equifax v. FTC, 678 F.2d 1047 (11th Cir. 1982); Trans Union v. FTC, 245 F.3d 809, 819 (2001); and various Consent Decrees.) Simply stated, the plain language of the FCRA demonstrates Trans Union's FCRA compliance is directly under the FTC's purview and plaintiff's private DPTA cause of action barred.

Counts III, IV and V assert "negligent misrepresentation," defamation and "intentional misrepresentation". As set forth above and in Trans Union's opening Memorandum, it is respectfully submitted that such claims are barred by Trans Union's FCRA qualified immunity because plaintiff has not met his burden on willfulness. However, even if the claims survived, which they should not, plaintiff has not suffered cognizable harm associated with the state-law claims.

Plaintiff's Objection and Local Rule 12 "Statement of Disputed Material Facts" make clear that V&M Holding was denied the credit card needed to open the eBay/Paypal account and the new business to be "owned by V&M". (Statement, para. 1; Objection, p. 2) There is not and was not any dispute that V&M Holding's applications were denied; plaintiff did not apply for business credit, the corporation did. (See Opening Brief, pp. 5-7, Section B)

---

[1]. Indeed, the most recent amendments to the FCRA (the Fair and Accurate Credit Transactions Act of 2003)(Public Law 108-159) expressly included additional preemption provisions prohibiting "law of any State" from regulating certain FCRA provision. 15 U.S.C. §1681t(b).

In this connection, plaintiff's reliance on Frost v. Experian, 1999 U.S. Dist. 6783, (S.D.N.Y. 1999) is entirely misplaced. First, the Magistrate Judge in Frost expressly held that Experian was entitled to summary judgment on plaintiff's FCRA claim arising out of plaintiff's Chase application for revolving business credit because "the FCRA is not application to applications for commercial credit." (**16-17). The only reason the Magistrate Judge allowed some state law claims to survive, along with the claim associated with plaintiff's Chase "business" application was that the consumer was an attorney and the application was **his**, ***not a corporate application***.

There, plaintiff alleged "that ***his*** application to chase Manhattan Bank...for revolving business credit...was denied." (*17)(emphasis supplied) The Court pointed out: "Upon rejecting ***plaintiff's*** application, Chase sent ***him*** a letter stating that ***his*** request for credit was denied and why. (*30)(emphasis supplied) Instantly, the opposite is true. Plaintiff did not apply for any of the business loans and the denial letters were addressed to V&M, not plaintiff; V&M and not plaintiff were denied the loans. As such, Frost, is inapposite with respect to the state law claims.

Finally, plaintiff admits V&M Holding is a valid corporation of which he owns 50%. Objection, p. 2. Plaintiff has not and cannot articulate how the claims stated connect him to any harm allegedly suffered by V&M Holding. Plaintiff does not bring this action as a derivative action or otherwise suggest how, as a shareholder, he has a right to make such a claim.

Even if plaintiff established willfulness sufficient to defeat Trans Union's qualified immunity, which he has not, plaintiff's state law claims are defective as a matter of law. Accordingly, Trans Union is entitled to summary judgment on plaintiff's state law claims because of its qualified immunity or because the claims fail to state a viable cause of action.

**D. Plaintiff Failed to adduce sufficient evidence, as a matter of law, to support his claim for emotional distress.**

Trans Union's Opening brief established that plaintiff failed to present virtually any evidence respecting a claim for emotional distress. Further, the claims out of which such distress arose fail as a matter of law.

In response, plaintiff submits nothing more than cursory argument of counsel and his own conclusory affidavit, which in two paragraphs purports to establish that and why he was denied credit by unidentified lenders and how that caused him to be "humiliated and embarrassed." The "evidence" is insufficient as a matter of law. *See* discussion of Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001) *cert den.*122 S.Ct. 346, 151 L.Ed.2d 261, Opening brief, p. 14 and Annis v. County of Westchester, 136 F.3d 239, (2nd. Cir. 1998)(where the court held evidence of emotional distress legally insufficient holding:

> "we find that the only evidence of Annis's emotional distress – her own testimony—is insufficient to warrant an award of compensatory damages for that injury. She has not alleged any physical manifestations of her emotional distress....[citations omitted]. She testified that she needs and has had counseling, but introduced no affidavit or other evidence to corroborate her testimony. [citations omitted] In short, In short, her testimony fails to establish that she suffers from any concrete emotional problems. [citations omitted]").

Despite ample opportunity to conduct discovery and/or to obtain competent third party affidavits, Plaintiff has failed to establish that he suffered a cognizable harm as a result of an inaccurate Trans Union report. Absent a showing of actual harm, Trans Union is entitled to judgment as a matter of law.

## III. CONCLUSION

For all the above reasons and authorities, Defendant Trans Union LLC respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice. In the alternative, if the affidavit of Mr. LeFebvre is considered, Trans Union

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*

DATED: August 12, 2005

CERTIFICATION

I, the undersigned, hereby certify that on the 18 day of August, 2005, a copy of the within Trans Union LLC's Reply to Plaintiffs' Objection to Trans Union's Motion for Summary Judgment was mailed to the following Attorney of Record for the Plaintiff:

Charles N. Redihan, Jr., Esq.
91 Friendship Street
Providence, RI 02903

Kevin C. Glavin