03 027 CNR:SH 9/2/05

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

JOHN VALVO

VS C. A. NO. 04 70S

TRANS UNION, LLC

**PLAINTIFF'S OBJECTION TO DEFENDANT, TRANS UNION LLC'S, MOTION TO STRIKE**

Now comes the plaintiff, John Valvo, and objects to defendant, Trans Union LLC's, motion to strike the affidavit of Richard Lefebvre.

CHARLES N. REDIHAN, JR. (1810)
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900
(401) 331-7123 FAX

TO Kevin C. Glavin, Esq.
Cutcliffe, Glavin & Archetto
155 South Main Street, Suite 300
Providence, RI 02903

Mark E. Kogan, Esq.
Bruce S. Luckman, Esq.
Timothy P. Creech, Esq.
Saltzberg,Trichon,Kogan & Wertheimer,PC
1818 Market St., 30th Floor
Philadelphia, PA 19103

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: September 2, 2005

03 027

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

JOHN VALVO

VS C. A. NO. 04 70S

TRANS UNION, LLC

**PLAINTIFF'S MEMORANDUM IN OBJECTION TO DEFENDANT'S MOTION TO STRIKE**

Factual Background: Plaintiff commenced this action in March 2004 for violations of the Fair Credit Reporting Act. By agreement of the parties, joint motions to extend the time both for completing discovery and for filing dispositive motions were filed by the parties and granted by the Court. The final order provided that discovery was to be concluded and dispositive motions filed by June 20, 2005. Plaintiff's counsel first identified Richard Lefebvre, the expert in question in a supplemental interrogatory answer filed on June 20. Coincidentally, this was also the date on which defendant filed its motion for summary judgment. After plaintiff responded to the motion for summary judgment, a response that included an affidavit from Richard Lefebvre, a credit reporting expert, ("Lefebvre"), defendant filed the instant motion to strike.

There are extenuating circumstances here which warrant denial of the motion. Counsel for plaintiff first contacted Lefebvre about reviewing the case on or about March 10, 2005 by mail. Counsel had no previous dealings with Lefebvre. Shortly thereafter at the beginning of April, counsel discussed the case in a brief telephone conversation with Lefebvre. On April 11 counsel mailed a retainer and interrogatory answers to Lefebvre for review. During the telephone conversation the witness had advised counsel that he would be undergoing surgery and would be in touch shortly. On approximately May 5, counsel wrote to the witness because he had not heard from him. On May 17 counsel forwarded copies of depositions and the parties' initial

disclosures to Lefebvre by overnight mail. In the next month, on June 16, four (4) days before the discovery closure date, counsel attempted to contact by phone to discuss this matter. On Thursday, June 16, 2005 counsel spoke at length with Lefebvre by phone about the merits of the case. This was the first instance in which counsel was able to discuss the case in depth and learn Lefebvre's opinions about the matter. At that point a decision was made to use Lefebvre as an expert in the case. ( See affidavit of Redihan, Exhibit A) Because the plaintiff was unavailable on June 17, supplemental answers to interrogatories were executed and filed on June 20. A copy was faxed to defense counsel the same day.

On June 27, 2005, plaintiff's counsel sent a copy of defendant's motion for summary judgment to Lefebvre. During the first week of July, plaintiff, his attorney and Lefebvre spoke by telephone conference call at length and discussed the case extensively. On July 13 the affidavit in opposition to summary judgment was sent to the witness. It was executed and returned to counsel shortly thereafter.

Mr. Lefebvre has been suffering from cancer. His surgery in April was cancer related. For a number of weeks, he underwent radiation and chemotherapy in California. Initially he would travel to California for treatment from his home in Flagstaff, Arizona. In July and August he actually moved to California for more intensive treatment, undergoing chemotherapy once a week and radiation five (5) times a week. Although he has been most cooperative since April, due to the serious nature of his illness and the aggressive treatment that he has undergone, he has not been able to work on a full time basis. (SeeExhibit B, Lefebvre affidavit) .

Lefebvre's illness has also restricted counsel's ability to contact him to discuss the case in detail. The debilitating effects of the illness and its drastic treatment have prevented him from being accessible and as responsive as one would ordinarily expect an expert to be. At present Lefebvre has yet to prepare a report. He has never met plaintiff or plaintiff's counsel in person.

.

Argument : Rule 26(a)(2) of the Federal Rules of Civil Procedure provides in pertinent part:

> ...(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.
>
> (C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial... F.R.C.P. 2.6(a) (2)

The mechanism for dealing with failures either to comply with discovery mandates in timely fashion is contained in FRCP 37(c) upon which defendant relies in support of the instant motion. That rule which provides strict sanctions for non-compliance also limits the imposition of sanctions to only certain classesof discovery violations. The Rule reads in part :

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed...

The plain language of the Rule indicates that sanctions, such as the exclusion of expert testimony sought by the defendant in this matter, are appropriate only in situations in which the discovery violation is "without substantial justification" or instances when the discovery failure is"harmless". F.R.C.P. 37(c)(1) ibid. As noted previously, plaintiff's delay in disclosing the existence of his expert was due to the circumstances related to the expert's serious illness. This

illness delayed his review of case materials and the formation of his opinions about the case. This, in turn, prevented counsel and Lefebvre from having meaningful discussions about the merits of the case. Counsel was unable to determine whether or not Lefebvre would be of assistanceas an expert until immediately before the close of discovery. Lefebvre was consulted in March of 2005 for the first time. This is not a situation in which counsel knew of the existence of an expert for the duration of the case, but deliberately withheld his identity until the time of trial. This is a situation in which the counsel was unable to determine until immediately before the close of discovery what the expert's anticipated testimony would be. Clearly the circumstances in this matter justify the belated disclosure.

The cases upon which defendant rely in support of this motion deal with discovery violations which are far more egregious than in the instant matter. Plaintiff's case is readily distinguishable from the cases cited by defendant. In Romero vs American Airlines, 194 F 3d 288 (1st Cir. 1999); 44 Fed R. Serv 3d (Callaghan) 1157, the defendant , during the course of the trial attempted to substitute two of its employees as witnesses in place of witnesses previously disclosed. Romero ibid. at p. 492. In excluding the testimony, the Court noted that both of the original witnesses were still employees of the defendant and available to testify. Defendant gave no adequate explanation for the late disclosure.

Ortiz-Lopez vs Sociedad Espanola De Auxilio Mutuo Y Beneficiencia De Puerto Rico,248 F. 3d 29( 1st Cir.2001) a wrongful death action which involved deliberate violations of three court orders compelling production of medical information about the deceased. The discovery failure was inadvertently brought to light on the day of trial. At a later hearing, the Court found that the plaintiffs had withheld information in bad faith when they represented that they were unable to secure discovery materials required in connection with the expert disclosure requirements of Rule 26(a) 2(B) and then blatantly produced the materials the next morning. The court barred the

expert testimony and subsequently dismissed the case with prejudice because of the lack of expert testimony.

Both of these cases can be contrasted with the instant matter where there is no proof of either bad faith or deliberate concealing or withholding of evidence. Both involve violations which surfaced at the outset of or during the course of trial. In both instances the parties had flimsy and inadequate explanations for their actions. The violations were discovered when it was too late toundo the damage that had been done. The courts had little choice but to sanction the parties involved. The instant case can be distinguished due to the extenuating circumstances andbecause the situation can be remedied.

Perhaps the most dramatic case is Klonoski vs Mahlab, 156 F 3d 255 (1st Cir 1998), a case of medical negligence which resulted in the death of the plaintiff's wife. In Klonoski the defense attempted to use previously undisclosed correspondence from the deceased to impeach the plaintiff at the very end of the plaintiff's case. A subsequent hearing revealed that the defense actually had been aware of the persons who provided the correspondence more than a year before trial but withheld the information until the end of the plaintiff's case. The Court of Appeals overturned the trial judge for abuse of discretion in finding that the letters were not discoverable as "impeachment materials". The Court of Appeals reversed and ordered a new trial.

The instant case contains none of the egregious conduct evident in the cited cases. All of these cases are bereft of mitigating circumstances. Each of the violations occurred on the eve of or during trial and involved non-disclosing parties who acted deliberately and, in the Ortiz matter, in bad faith. That is not the case in the instant matter.

Perhaps the most significant aspect of the instant case is that in addition to the justification for the delay, plaintiff's belated disclosure is clearly harmless. The Rules suggest that even a failure to disclose without justification is not sanctionable if the opposing party is not prejudiced. See notes to 2000 Amendment. The Rule provides that this sanction power only

applies when the failure to supplement was 'without substantial justification'. Even if the failure was not substantially justified, a party should be allowed to use material that was not disclosed if the lack of earlier notice was harmless. Advisory Committee Notes, 2000 Amendment Subdivision (1) p. 200.

Defendant has not been prejudiced or harmed in any way by plaintiff's belated discovery response. In the instant case, the trial has not yet been scheduled. Defendant has ample time to request the court's permission to reopen discovery to depose Mr. Lefebvre. Plaintiff has no objection to this. This can be done without delaying the trial.

The circumstances in the instant case are somewhat unique in another respect. Lefebvre is involved in a number of Fair Credit Reporting Act cases each year as iscounsel for defendant. Trans Union. Lefebvre is no stranger to Trans Union. He has been listed as an expert in a number of Trans Union actions and deposed by Trans Union's attorneys on at least one occasion. These unusual circumstances render the disclosure much less damaging than it might have been. The defense already knows a great deal about the witness. The defense has already filed a response to plaintiff's objection to its summary judgment motion. There is more than sufficient time for defendant to prepare its case for trial without excluding the affidavit and testimony of this witness. Any detriment occasioned by the disclosure can be remedied before trial.

In instances in which any possible prejudice can be corrected, courts have been reluctant to exclude evidence or preclude testimony when the prejudice can be ameliorated. In Galentine v Holland America, 333 F Supp 2d 991 (DC WD Wash 2004), the Court denied a Rule 37(c) motion to strike by extending the discovery deadline for the limited purpose of allowing the defendant to depose the witness in question. The court noted that the witness had been disclosed by the close of discovery, as in the instant matter. Because plaintiff's expert had the benefit of viewing the defense expert's report before preparing his own, the court stated that the jury could be informed that his report was prepared after having the benefit of viewing defendant's work. In denying the motion, the Court noted "The potential prejudice that defendant claims it will

suffer is not so severe as to warrant exclusion, especially given the possibility of ameliorating that prejudice through various means discussed below. Galentine ibid. at p. 994.

In light of the extenuating circumstances in this matter, plaintiff's discovery response was justifiable and did not harm defendant. For the foregoing reasons, plaintiff respectfully requests that the motion to strike be denied.

CHARLES N. REDIHAN, JR. (1810)
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900
(401) 331-7123 FAX

TO Kevin C. Glavin, Esq.
Cutcliffe, Glavin & Archetto
155 South Main Street, Suite 300
Providence, RI 02903

Mark E. Kogan, Esq.
Bruce S. Luckman, Esq.
Timothy P. Creech, Esq.
Saltzberg,Trichon,Kogan & Wertheimer,PC
1818 Market St., 30th Floor
Philadelphia, PA 19103

CERTIFICATION

I hereby certify that I mailed a copy of the within to counsel of record, as above.

Dated: September 2, 2005

03 027 CNR:SH

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

JOHN VALVO

VS C. A. NO. 04 70S

TRANS UNION, LLC

**AFFIDAVIT**

I, Richard F. Lefebvre, being duly sworn, upon oath say:

1. I am the president of AAA American Credit Bureau in Flagstaff, Arizona.

2. I was hospitalized while having (4) independent surgeries during March/April of 2005

3. I was again hospitalized for treatment of cancer in May, 2005.

4. Upon my release from the hospital, I continued chemotherapy treatment and was unable to work full time.

5. During July and August, 2005, I moved my family temporarily to California so that I could receive both chemo and radiation therapy treatment at Loma Linda Medical Cente

6. My treatment consisted of radiation five (5) days a week and chemotherapy once a week during July and August.

7. I have been unable to work full time during the period of my treatment.

8. The attached reports are true and accurate copies of Loma Linda Medical Center about my diagnosis, treatment plan, and recovery period.

9. I have not yet been able to prepare a written report of my opinions in this case.

[signature]

Richard F. Lefebvre

STATE OF ARIZONA
COUNTY OF Coconino

Subscribed and sworn to before me under penalty of perjury this 2 day of Setember, 2005.

Ryan M Renner

OFFICIAL SEAL
RYAN M. RENNER
NOTARY PUBLIC–STATE OF ARIZONA
COCONINO COUNTY
My commission expires June 1, 2008

# Loma Linda University Medical Center

Department of Radiation Medicine

11234 Anderson Street
Post Office Box 2000
Loma Linda, California 92354
(909) 558-[illegible]
FAX (909) 558-[illegible]

June 17, 2005

To Whom It May Concern
Re: Robert Lefebvre

Mr. Lefebvre has been diagnosed with small cell carcinoma of the paranasal sinus with neuroendocrine features.

Mr. Lefebvre has undergone much stress and anxiety since receiving report of his diagnosis. He has experienced a 30 pound weight loss even prior to receiving any treatment.

In April he began chemotherapy. This first line of treatment brought about such extreme side effects (fatigue, malaise, nausea, vomiting) Mr. Lefebvre required hospitalization.

Presently, the plan is for Mr. Lefebvre to continue with his chemotherapy while plans are being drawn for his proton radiation therapy. Radiation is expected to begin with in one week and proceed for a total of 40 treatments. With close supervision and proactive management, Mr. Lefebvre will remain on his chemo throughout the radiation. Expected side effects also include weight loss and fatigue.

It is strongly recommended that Mr. Lefebvre reduce his outside stress (emotional and physical) as much as possible during active treatment and during the post treatment period to promote healing.

Respectfully,

Maryellen McCarthy

Maryellen McCarthy, RN, BS, CCM
Case Manager Head, Neck Service
909-558-8267