UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN VALVO | : | |
| | : | |
| v. | : | C.A. No. 04-70S |
| | : | |
| TRANS UNION LLC | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

### Background

Before this Court is Defendant Trans Union LLC's ("Defendant" or "Trans Union") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. In his Amended Complaint, Plaintiff John Valvo ("Plaintiff") alleges violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA" or "the Act"), the Rhode Island Deceptive Trade Practices Act, R.I. Gen Laws § 6-13.1-23, and other state common law claims for negligence, defamation and malicious misrepresentation. Trans Union is sued in its capacity as a consumer reporting agency.

Trans Union submitted its Motion for Summary Judgment and Memorandum of Law (Document No. 38) on June 20, 2005. Plaintiff objected to Trans Union's Motion and submitted his Memorandum of Law (Document No. 49) on July 25, 2005. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local R. 32(c). A hearing was held on September 8, 2005. After reviewing the Memoranda submitted, listening to the arguments of counsel and conducting my own independent research, I recommend that Defendant's Motion for Summary Judgment be DENIED in part, and GRANTED in part, as set forth below.

## Statement of Facts

This case arises as a result of Trans Union mistakenly reporting credit information on Plaintiff's credit report that actually related to Plaintiff's adult son and not to him. As is common, Plaintiff and his son are both named John Valvo. Although they share the same name, they, of course, have different social security numbers, addresses and dates of birth. Plaintiff's son has the middle initial "J", whereas Plaintiff does not have a middle name. In 1998, Plaintiff's son John J. Valvo ("John J.") filed for bankruptcy under Chapter VII of the Bankruptcy Code, and several of his creditors subsequently charged off his accounts as uncollectible. Sometime after 1998, Trans Union began to erroneously include John J.'s bankruptcy and certain other negative entries as a part of Plaintiff's credit report.

Plaintiff first became aware of the erroneous bankruptcy entry on his credit report after he applied for credit for one of his small businesses, and his credit application was denied. Plaintiff is a principal and co-owner of two Rhode Island Subchapter S corporations, M.L. Roberts Inc., and V&M Holding Company. M.L. Roberts is an importer of jewelry components which it sells to manufacturers. V&M Holding Company is primarily a real estate holding company that occasionally sells small quantities of wholesale jewelry components. In 2002, Plaintiff sought to begin to utilize the Ebay website as an avenue for V&M Holding Company to sell its products. In order to use Ebay, a potential user must pay certain fees and expenses. Plaintiff wanted to pay those fees and expenses by opening a business credit card for V&M Holding Company. Upon applying for a business line of credit, however, Plaintiff's application was denied, and the reason stated for the denial was the personal bankruptcy entry on his credit report, which was issued by Trans Union. Plaintiff then requested a copy of his credit report from Trans Union, and discovered that the report contained an

entry stating that Plaintiff had filed for personal bankruptcy, and that he had several other negative credit accounts, which Plaintiff knew were not his own.

After receiving the credit report, Plaintiff contacted Trans Union to dispute the entries that he believed were inaccurate.[1]  Trans Union apparently investigated Plaintiff's dispute, corrected some of the disputed information and sent Plaintiff a revised credit report.  That revised report, however, still stated that Plaintiff had filed for personal bankruptcy, and it also included at least one other inaccurate entry.  Plaintiff then contacted Trans Union to dispute the revised credit report.  Ultimately, Plaintiff filed the present action in 2004.  After this case was filed, Trans Union removed the disputed information from Plaintiff's credit report.

## Summary Judgment Standard

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties.  Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case."  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting

---

[1] There is some minor dispute as to whether Plaintiff contacted Trans Union in writing, by phone, or both. However, this dispute is immaterial, since both parties agree Plaintiff contacted Trans Union, triggering Trans Union's internal process for resolving a dispute.

Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### Analysis

#### A.    Overview of the Fair Credit Reporting Act

Congress enacted the FCRA in 1970 as Title VI of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA"), which regulates the consumer credit industry. Congress adopted the FCRA with the explicit recognition that the health of the consumer banking system is "dependent upon fair and accurate credit reporting" and that "[i]naccurate credit reports directly impair the efficiency of the banking system." 15 U.S.C. § 1681(a)(1). A recurring theme of the CCPA is that the dissemination of accurate credit information is essential to maintain the vitality of the credit granting system for the benefit of both creditors and consumers.

The FCRA imposes responsibilities on three types of entities: "users," "consumer reporting agencies," and "furnishers." In this case, the duties of a consumer reporting agency, Trans Union, are at issue. They are subject to most of the requirements within the FCRA. Consumer reporting agencies are bound to follow reasonable procedures to assure the accuracy of their reports and to investigate a consumer's dispute that the information was incomplete or inaccurate. 15 U.S.C. §§ 1681e, 1681i. The FCRA provides a detailed procedure by which consumers may dispute inaccurate information contained within their credit files. 15 U.S.C. § 1681i. If a consumer reporting agency violates the Act, the FCRA permits consumers to file civil actions, and to recover damages. See Nelson v. Chase Manhattan Mortgage Corp, 282 F.3d 1057, 1060 (9th Cir. 2002).

#### B.    Section 1681e(b) Claim

Section 1681e(b) of the Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about

-5-

whom the report relates." In order to prevail on a claim under Section 1681e(b), a plaintiff must establish that (1) inaccurate information was contained in his or her credit report; (2) the inaccuracy was the result of defendant's failure to follow reasonable procedures; (3) he or she suffered injury; and (4) the injury was caused by the inaccuracy. Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996). Because of the nature of these elements, courts have concluded that Section 1681e(b) was intended to "penalize[ ] dissemination of inaccurate reports." Evantash v. G.E. Capital Mortgage Servs., Inc., No. 02-1188, 2003 WL 22844198, at *3 (E.D. Pa. Nov. 25, 2003).

In this case, Trans Union does not dispute that it placed inaccurate information in Plaintiff's credit report. However, Trans Union does challenge Plaintiff's ability to prove the remaining three elements of a claim under Section 1681e(b). Although Trans Union maintains that its procedures were reasonable, it does not focus its Motion for Summary Judgment on the "reasonable procedures" prong of the §1681e(b) test. Instead, Trans Union focuses on the third and fourth prongs of the test, damages and causation. Specifically, Trans Union contends that some of the evidence of injury produced by Plaintiff is not cognizable under the FCRA, that some of the injuries were not caused by Trans Union, and that the remaining evidence of injury is insufficient to establish a claim for damages under the FCRA.

### 1.    Damages

Under the FCRA, a plaintiff is entitled to recover damages based on whether the violation is negligent or willful. A negligent violation of the FCRA entitles a plaintiff to recover actual damages, as well as the costs of the action and reasonable attorneys' fees. See 15 U.S.C. § 1681o. In considering what constitutes actual damages, "courts have consistently held that actual damages

may include humiliation and mental distress...." Richardson v. Fleet Bank of Massachusetts, 190 F. Supp. 2d 81, 87 (D. Mass. 2001) (citation omitted). In addition to those damages available for a negligent violation, a willful violation of the FCRA entitles a plaintiff to recover punitive damages. See 15 U.S.C. § 1681n; Richardson, 190 F. Supp. 2d 81.

In this case, Plaintiff seeks actual damages (including damages for mental and emotional distress), costs, attorneys' fees and punitive damages. As evidence of his injury, Plaintiff claims he was denied credit, forced to liquidate assets prematurely, and charged a higher interest rate for a refinance of his home mortgage.

In support of his damages claims, Plaintiff produced letters he received when his credit applications were denied. Each of those letters states the reason credit was denied and the consumer reporting agency responsible for supplying the lender with the information that resulted in a denial of credit. Plaintiff produced the following letters: an August 31, 2002 denial from Fleet Bank for a line of credit for V&M Holding Company; a November 20, 2002 denial from Fleet Bank for a line of credit for V&M Holding Company (listing the consumer reporting agency as Experian); a November 26, 2002 Fleet National Bank denial for a Fleet Home Equity Loan for John Valvo; a May 16, 2003 denial of credit from Fleet Bank to John Valvo (listing the consumer reporting agency as Experian); a July 11, 2003 denial from Citizens Bank of a loan request for V&M Holding Company; and an April 19, 2004 denial of credit from Fleet Bank to John Valvo (listing the consumer reporting agency as Experian).

In addition to these letters, Plaintiff asserts several other claimed damages, but without any documentation or other independent proof. Plaintiff claims, for example, to have applied for loans

-7-

sometime in 2003 from Citizens Bank and from Sovereign Bank, and that he was denied those loans. Plaintiff does not, however, offer any competent evidence as to whether such loans were personal or business, the amount of the loans and the particular reason for denial. Further, Plaintiff claims that as a result of the denial of a home equity loan, on or about November 26, 2002, he was forced to liquidate tax- free RISDIC bonds prior to maturity in order to give money to his children. Plaintiff states that he intended to use the home equity loan to give the money to his children, but since he did not qualify for that loan because of the bankruptcy on his credit report, he was forced to prematurely liquidate his RISDIC bonds at a loss. He also claims he later applied to refinance his home mortgage in June 2003, and that the interest rate he was able to obtain was approximately 0.5% higher than an interest rate he would have been eligible to receive from another bank, absent any credit report irregularities. Finally, Plaintiff claims that, as a result of these credit denials and difficulties, he suffered embarrassment, humiliation and anxiety.

### a.    Business Damages are not Cognizable Under the FCRA

First, Trans Union points out that several of the credit denial letters submitted by Plaintiff were letters denying credit to one of Plaintiff's small businesses. Trans Union argues that evidence that Plaintiff was denied business credit cards and a commercial mortgage is irrelevant, since claims arising out of business transactions are not cognizable under the FCRA. See, e.g., Boothe v. TRW Credit Data, 523 F. Supp. 631, 633 (S.D.N.Y. 1981). Plaintiff did not contest this legal defense and offered no contrary legal authority. Thus, the Court accepts Defendant's argument, and will exclude from consideration the August 31, 2002 Fleet Bank denial of a credit line for V&M Holding Company; the November 20, 2002 Fleet Bank denial of a credit line for V&M Holding Company

-8-

(listing the reporting agency as Experian); and the July 11, 2003 Citizens Bank denial of a commercial loan for V&M Holding Company. In effect, this Court recommends that the District Court grant Trans Union partial summary judgment as to any FCRA claims based on these business denials. See Fed. R. Civ. P. 56(d).[2]

**b.    Damages Reported on Experian's Credit Reports are not Caused by Trans Union**

Next, Trans Union claims that several of the letters submitted by Plaintiff state that the credit applied for was denied as a result of a report issued by Experian, and that those letters should also be excluded from this Court's consideration of Plaintiff's damages. Experian is a consumer reporting agency, like Trans Union, and one of its competitors. Trans Union cannot be held liable for damages sustained by Plaintiff as a result of inaccurate information provided by Experian. Accordingly, the three letters, dated November 20, 2002, May 16, 2003, and April 19, 2004, which denied credit on the basis of Experian's reports, are not appropriate for consideration in this case against Trans Union, and this Court recommends that partial summary judgment be granted to Trans Union as to any FCRA claims based on those denials. In sum, this Court recommends granting partial summary judgment on Count I as to FCRA claims based on both the letters regarding business damages and those that were caused by Experian.

The only documents which the Court deems relevant evidence in this FCRA case are those which list a credit denial to Plaintiff, personally, on the basis of an inaccurate credit report issued by

---

[2] "Rule 56(d) provides the Court with a tool to 'narrow the factual issues for trial.'" Russell v. Enter. Rent-A-Car Co. of RI, 160 F. Supp. 2d 239, 248 (D.R.I. 2001), quoting Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 747 (1ˢᵗ Cir. 1995).

Trans Union.  In this case, the only document submitted by Plaintiff which meets that criteria and can avert summary judgment is the November 26, 2002 Fleet home equity mortgage denial.  Further, although there is limited evidence, this Court also concludes that summary judgment is not warranted on Plaintiff's claims regarding the alleged higher interest rate assessed on the mortgage refinance as well as the premature redemption of the RISDIC bonds.  Because there is no indication of why Plaintiff may have been denied credit by Citizens Bank or by Sovereign Bank, whether it was a personal or business loan, and no information regarding which consumer reporting agency supplied those banks with consumer information, Plaintiff has not produced, as is his obligation under Fed. R. Civ. P. 56(e), any competent evidence of the damages sustained, nor any evidence of causation, and thus, those two claimed injuries cannot avert summary judgment.  Having considered his claimed monetary injuries, the Court now turns to the parties' disagreement regarding the viability of Plaintiff's emotional distress claim.

      **c.**      **Plaintiff's Proof of Emotional Distress**

Plaintiff also seeks emotional distress damages for his claimed, "humiliation, embarrassment and anxiety."  Trans Union claims Plaintiff has not set forth sufficient evidence of his claimed emotional distress.  It points out, and Plaintiff concedes, that Plaintiff never sought medical treatment for his emotional distress, and does not have any documentation for prescribed medicines.  Trans Union points this Court to Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001), for the proposition that Plaintiff has not presented sufficient corroborating testimony for his claim of emotional distress.  In Cousin, the plaintiff's Trans Union credit report contained inaccurate information, but that credit report was never published to a third party, and never served as the basis

-10-

for a credit denial. Therefore, Plaintiff's only possible "actual damages" against Trans Union were damages related to his emotional distress and his testimony that he was "very upset [and] angry" when he saw a Trans Union credit report with inaccurate information. The Fifth Circuit Court of Appeals declined to uphold an award of emotional damages in the plaintiff's favor, stating that a claim for emotional distress must be accompanied by, "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." Id. at 371. The present case is factually distinct from Cousin, however, since in this case, Plaintiff has presented at least some evidence that a Trans Union credit report containing inaccurate information about him was published to a third party, and such publication had an adverse impact on him.

Although Plaintiff's counsel offered at the summary judgment hearing to present corroborating testimony regarding Plaintiff's emotional distress claims, this Court recommends denying Trans Union's Motion in this regard and allowing the emotional distress claims to proceed even without the submission of any further evidence by Plaintiff. In addition to the fact that the cases relied upon by Trans Union are distinguishable, it also does not appear that the First Circuit has specifically adopted the rule set out by the Fifth Circuit in Cousin. See Richardson, 190 F. Supp. 2d at 87 (declining to enter summary judgment in Defendant's favor despite Plaintiff's failure to show any out-of-pocket expenses related to claimed emotional distress). Although this issue presents a close call, at this stage, the Court must view the evidence in the light most favorable to Plaintiff, and there remains a genuine issue of fact as to such damages. Thus, this Court cannot recommend entry of summary judgment in Trans Union's favor on the emotional distress claim.

Plaintiff's minimal evidence is sufficient to meet its burden under Fed. R. Civ. P. 56(e) and thus to survive this stage of the proceedings.

### 2.    Negligent Violation of the FCRA

Having thoroughly reviewed all of the damages claimed by Plaintiff, this Court is now in a position to step back and to consider all four factors in the Section 1681e(b) test, and to determine whether Plaintiff has provided the Court with evidence sufficient enough to allow a reasonable jury to find that Plaintiff has met all four prongs of the test. The specific FCRA allegations remaining are based on the November 26, 2002 credit denial by Fleet, damages claimed from the Plaintiff's redemption of his RISDIC bonds, damages claimed as a result of the higher interest rate on the 2003 mortgage refinance and Plaintiff's emotional distress claim.

The Court has already noted that both parties agree that the disputed information in Plaintiff's credit report was inaccurate. Further, this Court above has thoroughly considered the damages and causation arguments, and determined that at least some of Plaintiff's damages claims survive Trans Union's Motion for Summary Judgment. Accordingly, the only factor of the four-part test that has not been considered is the "reasonable procedures" factor.

It is undisputed that Trans Union reported John J.'s personal information as a part of Plaintiff's credit report, even after receiving notice from Plaintiff that the accounts did not belong to him. Trans Union asserts that despite this admitted inaccuracy, its procedures are reasonable, and that this single inaccuracy was the result of "operator error" and not the result of unreasonable procedures. Trans Union states that when it obtains a dispute from a consumer, it contacts its public records vendor, and instructs the public records vendor to investigate the dispute and to report back

to it. In the present case, Trans Union contacted its vendor, Hogan Information Services, requested that the vendor investigate the dispute, and then received information from the vendor that the disputed information did not belong to Plaintiff. Trans Union claims that all of the disputed information should have been removed from Plaintiff's credit report, but that a single operator at Trans Union mistakenly failed to remove the bankruptcy entry. It notes that seven other inaccurate entries were removed from Plaintiff's report. Trans Union argues that in light of the steps taken, the bankruptcy entry is merely a single error, and not evidence of a failure to maintain reasonable procedures.

Plaintiff, on the other hand, argues that Trans Union does not have reasonable procedures in place, because the inaccurate entry remained on his credit report even after it was confirmed to be incorrect. Plaintiff suggests that a reasonable procedure would have included at least some more involved review of the work completed on Plaintiff's file. Plaintiff argues that factual issues exist as to the reasonableness of Trans Union's procedures. For instance, Plaintiff notes that the investigator assigned to his dispute was a temporary employee, and his work was subject to very limited and random quality control review. He also notes the lack of any computer cross-checking of personal identifiers such as social security numbers. Finally, there are factual issues regarding the reasonableness of the hiring and training procedures for such investigators.

Courts have held that the issue of reasonable procedures under § 1681e(b) is "a 'jury question[ ] in the overwhelming majority of cases.'" See, e.g., Dalton v. Capital Assoc. Indus., Inc., 257 F.3d 409, 416 (4th Cir. 2001) (citation omitted). This Court is not in a position, based on the current posture of this case, to determine whether Trans Union has reasonable procedures in place

-13-

as a matter of law.  Given the parties' genuine factual dispute regarding the procedures in place at Trans Union, the Court cannot state that Plaintiff's Section 1681e(b) claim fails to present any genuine issues of material fact.  Summary judgment as to the negligent violation claim, therefore, would be inappropriate.

### 3.    Willful Violation of the FCRA

Trans Union also moves for summary judgment with respect to Plaintiff's claims under Section 1681n, which provides for recovery for willful violations of the FCRA.  A willful violation occurs in the event that "a defendant...knowingly committed an act in conscious disregard for the rights of others."  See Stevenson v. TRW Inc, 987 F.2d 288, 293 (5th Cir. 1993).  It also occurs when a "defendant's conduct involves willful misrepresentations or concealment.  In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer."  Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001).  Considering all of the evidence in a light most favorable to Plaintiff, there is no genuine issue of material fact that prevents the entry of summary judgment as to the willful violation claim.

In short, the Court finds that Plaintiff has not produced any competent evidence that Trans Union misrepresented or concealed information, or otherwise "knowingly committed an act in conscious disregard" of Plaintiff's rights.  In this case, Plaintiff disputed the inaccurate information on his credit report, and all of the information that was inaccurate was removed, with the exception of the bankruptcy report.   That single mistake is insufficient to create a genuine issue of material fact as to willfulness, particularly where Trans Union's procedures apparently resulted in the removal of the other inaccurate information.   In fact, Plaintiff's counsel conceded that the one act complained

of was insufficient to show a willful violation, but argued that the entire picture demonstrated the requisite willfulness. Looking at the entire picture, however, it indicates just the opposite: specifically, the entire picture shows that the vast majority of the disputed items were removed from Plaintiff's credit report.

Like the Court in <u>Richardson</u>, this Court concludes that "the...contention that [Defendant] failed to correct an error in their credit reports after receiving several notices does not constitute evidence of a willful violation." 190 F. Supp 2d. at 89. While Plaintiff has produced sufficient evidence to identify a factual issue as to reasonableness under § 1681e(b), he has not done so for the more exacting issue of willfulness under §1681n. Accordingly, this Court recommends the entry of summary judgment in Trans Union's favor on the willful violation count.

## C.    State Law Claims

The FCRA allows plaintiffs to pursue certain state law claims against consumer reporting agencies, so long as the consumer reporting agency is found to have willfully violated the FCRA. If the consumer reporting agency has not willfully violated the FCRA, the consumer reporting agency has qualified immunity from suit under the FCRA. As noted, the Court has concluded that Plaintiff has not offered sufficient evidence to support a reasonable finding of willfulness. Therefore, under  Section 1681h(e) of the Act, Plaintiff's state law claims are barred. <u>See</u> <u>Richardson</u> 190 F. Supp. 2d at 90 ("[t]he FCRA preempts certain state law privacy causes of action, such as defamation."). Section 1681h(e) has been interpreted "to provide qualified immunity to consumer reporting agencies except as to false information furnished with malice or willful intent to injure." <u>Id.</u>  In this case, although Trans Union admits that the disputed information did not

belong to Plaintiff, this Court has found that Plaintiff has not met its burden of producing sufficient competent evidence from which a reasonable jury could find that any violation of the FCRA by Trans Union was willful. Thus, this Court also recommends that Trans Union's Motion for Summary Judgment as to Plaintiff's state law tort claims be GRANTED pursuant to § 1681h(e).

In addition to the misrepresentation, defamation and negligence claims, Plaintiff also alleges a claim under the Rhode Island Deceptive Trade Practices Act (the "DTPA"), R.I. Gen. Laws § 6-13.1-23. The Plaintiff's potential DTPA claim is also barred, however, since the Rhode Island Supreme Court has recently held that a claim under the DTPA is preempted when the activity complained of is otherwise regulated. See Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666 (R.I. 2004). In this case, Trans Union's compliance with the FCRA is regulated by the Federal Trade Commission, which has the power to oversee and to enforce the requirements set out in the FCRA. See 15 U.S.C. § 1681s. Since the FCRA preempts the DTPA claim, this Court also recommends that summary judgment be entered on Trans Union's behalf as to the DTPA claim.

### Conclusion

For the reasons stated, I recommend that Trans Union's Motion for Summary Judgment (Document No. 38) be GRANTED as to all of Plaintiff's state law claims (Counts II, III, IV and V), and as to Plaintiff's claim for a willful violation of the FCRA under Count I; and DENIED as to Plaintiff's claim for negligent violation of the FCRA under Count I. I also recommend, as specifically described above, that Partial Summary Judgment be GRANTED to Trans Union as to certain elements of Plaintiff's FCRA claim under Count I. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days

of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file specific objections in a timely

manner constitutes a waiver of the right to review by the District Court and the right to appeal the

District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).


LINCOLN D. ALMOND
United States Magistrate Judge
October 27, 2005

-17-